## SOUTHPORT PETROLEUM CO. *v.* NATIONAL LABOR RELATIONS BOARD.

No. 67.   Argued January 5, 1942.—Decided January 19, 1942.

---

[7] The same ruling was embodied in the instructions to the jury.

*Mr. Harry Dow,* with whom *Mr. Morris D. Meyer* was on the brief, for petitioner.

*Mr. Robert B. Watts,* with whom *Solicitor General Fahy* and *Messrs. Laurence A. Knapp* and *Morris P. Glushien* were on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The petitioner, a Texas corporation, was ordered by the National Labor Relations Board in August of 1938 to cease and desist from unfair labor practices; [1] to offer to

---

[1] Section 1 of the Board's order required that the petitioner cease and desist from:

"(a) Discouraging membership in Oil Workers International Union, Local No. 227, or in any other labor organization of its employees, by discharging its employees or by otherwise discriminating in regard to hire or tenure of employment or any term or condition of employment;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through repre-

reinstate three employees found to have been discriminatorily discharged, and to pay them back pay for the period from the time of discharge to the date of the offer of reinstatement, less earnings during such period; and to post certain notices at its Texas City refinery, where the unfair labor practices had been employed.

The petitioner has never obeyed any of the affirmative directions of the order. In June of 1939 it entered into a written stipulation with the Board that it would obey the order except as it related to back pay, and the Board stipulated on its part that it would accept the performance so promised as sufficient compliance with its order. But the petitioner no more regarded its own promise than it had the Board's command. It finally ceased even to answer communications from the Board, and the latter, in April of 1940, filed its petition with the Circuit Court of Appeals for the Fifth Circuit for enforcement of its order.

The petitioner then began the pleas to that court, denial of which it says are errors. Nearly four months after the Board had filed its petition, the present petitioner filed an application, under § 10 (e) of the National Labor Relations Act,[2] to adduce additional evidence before the Board.

---

sentatives of their own choosing, or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

We do not consider the question whether, in the rather unusual circumstances of this case, the order should be modified as being unduly broad in this respect, see *National Labor Relations Board* v. *Express Publishing Co.*, 312 U. S. 426, since this question was not considered or raised in the court below or in the petition for certiorari. *Alice State Bank* v. *Houston Pasture Co.*, 247 U. S. 240, 242; *Gunning* v. *Cooley*, 281 U. S. 90, 98; *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172, 182.

[2] This provides in pertinent part as follows: "If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to

The application stated on the oath of petitioner's president that in June of 1939, three days after petitioner had executed the stipulation of obedience to the Board's order, it distributed all of its assets to its four stockholders as a liquidating dividend; and that the two stockholders who received the Texas City refinery conveyed it to a newly organized Delaware corporation whose stockholders were at no time stockholders of the Texas corporation. It asked that the court order that proof of these facts be taken before the Board or its agent and added to the transcript, and that the court thereupon dismiss the enforcement proceeding. In November of 1940, while this application was pending, it filed an answer to the petition for enforcement, attacking the findings and order of the Board on evidentiary grounds, and also praying that the petition be dismissed because petitioner had been formally dissolved on October 16, 1940, as evidenced by an attached copy of a certificate by the Texas Assistant Secretary of State.[3]

---

adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the transcript." 49 Stat. 449, 454; 29 U. S. C. (Supp. V) § 160 (e).

[3] Texas provides by statute that:

"*Art. 1388. Liquidation by officers.*—Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said

The Circuit Court of Appeals sustained the Board's order and entered a decree directing that it be enforced, thus in effect denying the motion to dismiss and the application for leave to adduce additional evidence. 117 F. 2d 90. We granted certiorari limited to the question of the propriety of the denial of the latter because of the general importance of the question.

We hold that the application for leave to adduce additional evidence pursuant to § 10 (e) of the National Labor Relations Act was addressed to the sound judicial discretion of the court, and that the denial of petitioner's application under the circumstances disclosed by the record in this case was not error.

To ensure that the applicable part of § 10 (e) would be used only for proper purposes, and not abused by resort to it as a mere instrument of delay, Congress provided that before the court might grant relief thereunder it must be satisfied of the materiality of the additional evidence, and that there were reasonable grounds for failure to adduce it at the hearing before the Board. The decision below under § 10 (e) apparently resulted solely from a belief that

---

trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands.

"*Art. 1389. Extension of existence.*—The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs. In case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the court so long as in its discretion it is necessary to suitably settle the affairs of such corporation.

"*Art. 1390. Effect of dissolution.*—The dissolution of a corporation shall not operate to abate, nor be construed as abating any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation and judgment shall be rendered as though the same were not dissolved." 3 Vernon's Annotated Texas Statutes (Civil Statutes).

the proffered evidence was not "material." Accordingly, we have no occasion to decide whether a Circuit Court of Appeals may in its discretion deny an application under § 10 (e) even though it be satisfied that the additional evidence is material and that there were reasonable grounds for failure to adduce it in the hearing before the Board. For the same reason we do not consider the question of the credibility of petitioner's allegations, viewed in the light of its conduct.

The petitioner's conduct does, however, give point to omissions of pertinent facts from its allegations. The record makes it certain that it would gain delay by all honorable means and leaves it doubtful whether it has even stopped at that. The liquidation relied upon took place three days after it had entered into the stipulation of obedience. The purpose to liquidate was not communicated to the Board, nor was the Board advised of the action when taken, nor until nearly four months after the petition for enforcement was filed in the Circuit Court of Appeals.

The statements that the Texas corporation has discontinued operations and that the Delaware corporation has taken over the refinery did not call for recommitment by the Circuit Court of Appeals to the Board for reconsideration of that part of its order which required that the three employees be offered reinstatement. The allegation in the application that the "owners of the stock of Southport Petroleum Company of Delaware, were never the owners of any of the stock of the respondent herein," does not negative either the possibility that the stock in the Delaware corporation represents but an insubstantial part of its total capitalization, with the balance and real control being held by the Texas corporation or its stockholders, or that its stock was held by straw men. A sworn statement in the answer to the Board's petition that the Delaware corporation "is a separate and distinct entity and the

stockholders in respondent have no interest, and never had any interest, directly or indirectly, in the stock ownership of the said Delaware corporation, all as set out in respondent's motion heretofore filed herein," if it adds anything, does not add enough to negative these possibilities, for the court was not required to be satisfied with such conclusions of the petitioner.

Implicit in the reinstatement provision of the Board's order was a condition of the continued operation by the offending employer of the refinery to the employment of which the illegally discharged employees were to be restored.[4] Such operation might have continued under the old business form or under a disguise intended to evade this provision. If there was merely a change in name or in apparent control there is no reason to grant the petitioner relief from the Board's order of reinstatement; instead there is added ground for compelling obedience. Whether there was a *bona fide* discontinuance and a true change of ownership—which would terminate the duty of reinstatement created by the Board's order—or merely a disguised continuance of the old employer, does not clearly appear, and accordingly is a question of fact properly to be resolved by the Board on direct resort to it, or by the court if contempt proceedings are instituted.[5]

The additional evidence was immaterial for the further reason that the Board's order ran not only to the petitioner, but also to its "officers, agents, successors, and assigns." [6]

---

[4] The order required that the employees be reinstated "to their former positions, without prejudice to their seniority and other rights and privileges."

[5] Such proceedings may be instituted only by the Board. *Amalgamated Utility Workers* v. *Consolidated Edison Co.*, 309 U. S. 261.

[6] This is the usual form of order, and has frequently been employed in cases where this Court has sustained Board orders. *E. g.*, *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S.

Granting the truth of every one of petitioner's allegations, it still is possible that the Board's order may yet be the basis—and the indispensable basis—of liability on the part of any of these persons, regardless of any present incapacity of petitioner to perform, or liability on its part for failure to perform, its duty of reinstatement. Of course, we do not pass on the question whether any such liability actually exists; all we hold is that there has not been a sufficient showing by the petitioner to negative the possibility which we note.

The petitioner's allegations are immaterial with respect to the back pay provision in the Board's order for like reasons and because some liability in this respect unquestionably exists, although for a disputed period of time. And, from what we have said, it is apparent that the petitioner has not shown that there has been any change in its relations to the refinery such as to indicate any alteration of the Board's order in respect of its requirements that petitioner post notices at "its Texas City, Texas, refinery," and that it desist from unfair labor practices.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.

---

197, enforcing, as modified, 4 N. L. R. B. 71, 108; *National Labor Relations Board* v. *Newport News Shipbuilding & Dry Dock Co.*, 308 U. S. 241, enforcing 8 N. L. R. B. 866, 877; *National Labor Relations Board* v. *Falk Corporation*, 308 U. S. 453, enforcing 6 N. L. R. B. 654, 666; *National Labor Relations Board* v. *Waterman Steamship Corp.*, 309 U. S. 206, enforcing 7 N. L. R. B. 237, 252; *National Labor Relations Board* v. *Link-Belt Co.*, 311 U. S. 584, enforcing 12 N. L. R. B. 854, 883; *Phelps Dodge Corp.* v. *National Labor Relations Board*, 313 U. S. 177, enforcing, as modified, and remanding 19 N. L. R. B. 547, 603.

MR. JUSTICE REED, dissenting:

The record does not lead me to the conclusion that petitioner has taken any improper steps to secure leave to adduce additional evidence, the matter to which the certiorari was limited by our grant. It is plain that the Circuit Court of Appeals did not act on any such ground. Neither the record on that issue nor the Government's brief or argument make any such contention. Only after evidence before the Board would it seem proper for a court to form its opinion of that question.

So far as we now know, the petitioner sold its facilities in good faith, after the entry of the Board's order and prior to its motion to remand, thus divesting itself of all interest or control over its former properties. In that situation it asked a remand to the Board to present before the Board the change of conditions because of which it asked a dismissal of the proceedings. § 10 (e), 49 Stat. 453. There were two literally unconditional provisions of the order which petitioner, if its allegations are true, could not meet, 2 (a) and (c):

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

(a) Offer to William Cornish, E. D. Richey, and Earl Gooch immediate and full reinstatement to their former positions, without prejudice to their seniority and other rights and privileges;

.    .    .    .    .

(c) Post immediately notices in conspicuous places at its Texas City, Texas, refinery stating that the respondent will cease and desist in the manner aforesaid, and maintain said notices for a period of thirty (30) consecutive days from the date of posting;"

In its brief, respondent, it seems to me, admits the correctness of petitioner's view. It says:

"In its application to adduce evidence petitioner alleged that by reason of its distribution of assets and discontinuation of business it could not reinstate any employees. Thereafter in its petition for rehearing in the court below and petition for certiorari in this Court, petitioner maintained that it could not do so unless, as it suggested, the order required it to purchase and operate another refinery or otherwise resume business. Properly construed (cf. *Federal Trade Commission* v. *Standard Education Society*, 302 U. S. 112, 117–118), the order contains no such requirement. Its purpose was to remedy petitioner's violations of the Act by restoring the status quo as it existed prior to the violations, but only to the extent possible under the circumstances existing at the time of compliance, assuming that the circumstances were not changed through any bad faith on petitioner's part. See *National Labor Relations Board* v. *Remington Rand, Inc.*, 97 F. 2d 195, 196–197 (C. C. A. 2). That the men were to be offered reinstatement 'to their former positions' is express indication that the reinstatement provision was contingent upon continued operation of the Texas City refinery. This likewise appears to have been true of paragraph 2 (c) of the order requiring the posting of notices 'at its Texas City, Texas, refinery.'"

We cannot treat this suggestion as relieving this petitioner of the threat of contempt proceedings. The statement does not consent to the amendment of the order. Bad faith may still be claimed to exist. This should be determined by the Board. Consequently, I am of the opinion that the decree below should be reversed with directions to sustain the motion for a remand unless the Board agrees to eliminate §§ 2 (a) and (c) of the order, in line with the Board's apparent concession in its brief.

The CHIEF JUSTICE concurs in this dissent.