PER CURIAM:
In these consolidated appeals, NLRB v. FDI, Inc., No. 77-3639, and In re Bel Air Chateau Hospital, No. 77-1556, the National Labor Relations Board challenges district court orders staying proceedings that the Board initiated to correct alleged violations of the National Labor Relations Act, 29 U.S.C. §§ 151 — 169. In FDI, where the Board issued a remedial order before the stay took effect, the Board seeks enforcement of its order. We vacate the stays and order enforcement in FDI.
*1250 I
We address the propriety of the stays but first set forth the procedural history of each case separately.
A. NLRB v. FDI, INC. — No. 77-3639
On August 31, 1977 the Board issued an order against FDI, arising from FDI’s refusal to bargain with a certified bargaining representative of FDI employees. After the Board applied to this court for enforcement of the order, FDI filed a petition under Chapter XI of the Bankruptcy Act. The bankruptcy judge then filed an order staying all proceedings against FDI. FDI notified the court of both this order and Bankruptcy Rule ll-44(a), which it claimed operated as an automatic stay of our proceedings. We then ordered that the case be consolidated and heard with In re Bel Air Chateau Hospital.
B. In re Bel Air Chateau Hospital — No. 77-1556
On February 13, 1976 Bel Air discharged a number of its employees, one of whom, Sundae Webb, filed an unfair labor practice charge against Bel Air on February 17. Also on February 13, Bel Air filed a petition under Chapter XI and began operating as a debtor-in-possession until March 3, 1976, at which time Sam Jonas was appointed as receiver. On April 26, 1976 the Board filed a complaint against Bel Air and the receiver, as Bel Air’s alter ego, alleging that the failure to reinstate the discharged employees was violative of the Act.
Prior to the scheduled July 1, 1976 hearing on the Board’s complaint, the Receiver filed a complaint in the bankruptcy court for an order restraining the impending Board proceedings. The Receiver alleged that the Board was stayed from proceeding on its complaint by the automatic stay provision of Bankruptcy Rule 11 — 44 and, furthermore, that the Receiver could not be compelled to reinstate employees because it was a different entity than the one that allegedly committed the unfair labor practices. The bankruptcy court issued the stay, and the district court affirmed. The Board appeals the stay.
C. The Stay
Bankruptcy Rule 11-44, which was in effect at the time the debtors filed their Chapter XI petitions, provides that the filing of a Chapter XI petition “shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor . . .” This rule is the counterpart of § 314 of the Bankruptcy Act, 11 U.S.C. § 714, and makes automatic the stays that the bankruptcy court is authorized to impose under § 314 on application of the debtor. See Colonial Tavern, Inc. v. Byrne, 420 F.Supp. 44, 45 (D.Mass. 1976). The purpose of Rule 11 — 44 is to protect the assets of the debtor from independent attachment by creditors during the Chapter XI arrangement. Id.
In both of the cases before us, it was urged that Rule 11-44 provided the basis for granting a stay of Board proceedings. It is unclear from either of the orders granting the stays, however, whether the courts authorized the stay on the basis of the Rule 11-44 automatic stay provision, or as an exercise of discretion. We need not resolve this uncertainty since we find it was error to stay the proceedings on either ground.
1. Rule 11 — 44. In Nathanson v. NLRB, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the Supreme Court held that the Board, not the bankruptcy court, should liquidate the amount of back pay award owed by the bankrupt to its employees under a Board order. According to the Court, where the matter has been entrusted by Congress to an administrative agency, the bankruptcy court should normally stay its hand pending an administrative decision because Congress has entrusted to the agency the authority to determine appropriate remedies. Id. at 30, 73 S.Ct. 80.
Nathanson strongly suggests that the bankruptcy court should be reluctant to interfere with Board proceedings, and leads us to conclude that regulatory proceedings such as the Board’s cannot be subject to the *1251 automatic stay provisions of Rule 11-44. See Colonial Tavern, Inc., 420 F.Supp. at 45-46. This conclusion is not inconsistent with Rule 11-44’s purpose of protecting a pecuniary interest in the property of the debtor since regulatory proceedings in the typical case are directed to protecting the public welfare. If regulatory proceedings threaten the assets of the estate, the decision to issue a stay can then be made on a discretionary basis.
This result appears harmonious with the new bankruptcy law that recently became effective. Under 11 U.S.C. § 362(a)(1), the filing of a petition will normally operate as a stay of judicial or administrative proceedings. Section 362(b)(4), however, provides that the filing of a petition does not automatically stay an action by a governmental unit to enforce the government’s police or regulatory power.[1] Instead, stays will be granted only if a party shows the necessity for a stay. Section 362 thus makes explicit the principles of the old bankruptcy law: stays of regulatory proceedings should not be automatic but are appropriate when it is likely that the court proceedings will threaten the estate’s assets.
2. Discretionary Relief. Even if the courts did not rely on Rule 11-44 but instead issued the stays as an exercise of their discretion, we find that the stays should not have been issued.
In In re Bel Air Chateau Hospital, the bankruptcy court appears to have issued the stay because the alleged unfair labor practices were committed by Bel Air but it was the Receiver who was presently in operation of the business. The court concluded that the Receiver was not the “alter ego” of either the pre-bankruptcy debtor or the debtor in possession, but was instead “a new and distinct juridical entity” against whom the prior unfair labor practices could not be remedied.
We think the court erred in issuing a stay solely on the basis of its determination that the Receiver was not an alter ego of the business’s former operators. Whether a new employer is an “alter ego” or a “successor” to an earlier employer is a question of substantive federal labor law, the resolution of which is committed to the Board and the courts that review its determinations. See, e. g., Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); Southport Petroleum Co. v. NLRB, 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942). It is by no means clear in the event that the Board should determine that Bel Air committed unfair labor practices that it cannot enforce a remedial order against the Receiver, see, e.g., NLRB v. Coal Creek Coal Co., 204 F.2d 579 (10th Cir. 1953), especially in light of established policy against allowing employers to change their legal form as a means of evading their responsibility under the Act. See South-port Petroleum Co., 315 U.S. at 106, 62 S.Ct. 452. The bankruptcy court erred in issuing a stay on the basis of an unresolved issue of federal labor law.
It follows that the court in FDI erred in issuing a stay. No reasons appeared on the face of the order to support the stay. Further, unlike In re Bel Air Chateau Hospital, the debtor is still in operation of the business, and alter ego cannot be argued to justify the imposition of a stay. That stay too must be vacated.[2]
II
Because we vacate the stay, we must determine whether to enforce the Board’s order in FDI.
FDI refused to bargain with the United Automobile Workers (“Union”) after the Union had been certified as the employees’ exclusive bargaining representative by the *1252 National Labor Relations Board. The Board found that FDI had violated §§ 8(a)(5) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and 158(a)(1), by its refusal to bargain. We order enforcement.
In March 1976 the Union filed a representation petition seeking certification as the exclusive bargaining agent of FDI’s City of Industry, California, facility. After a hearing, the Regional Director ordered an election. FDI filed a timely objection to the order, arguing, inter alia, that the Regional Director had included two individuals in the bargaining unit who should have been characterized as “supervisors.” The Board denied FDI’s request for review. The election was held; fifty votes were cast in favor of the Union, 27 against.
FDI filed timely objections to certification, including allegations of discrimination and coercion by the Union. The Regional Director assigned an attorney from the region to conduct a hearing on these objections. During the hearing, FDI sought to subpoena from the Union any documents that might show allegations of discrimination, whether based on sex, age, race or national origin. The hearing officer postponed the hearing pending enforcement of the subpoenas. The Regional Director denied enforcement of the subpoenas and remanded the matter to the hearing officer for determinatipn of the materiality and relevance of the documents sought. The hearing officer found that none of the evidence that FDI sought was relevant to the issue of discrimination and recommended that the FDI’s objections be overruled and that a Certificate of Representative be issued. The Regional Director adopted the hearing officer’s recommendation, and the Board denied FDI’s request for review of certification. When FDI refused to bargain with the Union, the Board issued a complaint and found that FDI’s refusal to bargain was an unfair labor practice. The Board now seeks to enforce its bargaining order.
FDI raises one substantive and several procedural objections to enforcement. None of the objections has merit.
A.
FDI employed six persons in the unit as “group leaders.” The Board found that four of those persons were supervisors and excluded them from the proposed bargaining unit. It found that two of these group leaders, Hamaid Tabatabai and Ronnie Rael, were not supervisors and allowed them to vote. FDI contends that this determination was not supported by substantial evidence.
FDI concedes, as it must, that this court gives great deference to the expertise of the Board in its determinations of whether particular employees are supervisors. NLRB v. Big Three Industries, Inc., 602 F.2d 898, 901 (9th Cir. 1979); NLRB v. Adrian Belt Co., 578 F.2d 1304, 1311 (9th Cir. 1978). The Board’s inclusion of .Tabatabai and Rael within the bargaining unit was reasonable. The evidence showed that Tabatabai was a part-time employee who had formerly been a group leader at another company facility. Rael was in training to be a group leader. Unlike the four whom the Board found to be supervisors, Tabatabai and Rael did not have authority to hire and fire employees nor, apparently, to discipline them. Consequently, the fact that Tabatabai and Rael may have occasionally exercised some limited supervisory powers is insufficient to establish that the Board abused its discretion in classifying Tabatabai and Rael in the manner it did. See NLRB v. Doctors’ Hospital of Modesto, Inc., 489 F.2d 772, 776 (9th Cir. 1973).
B.
FDI’s primary procedural objection to the Board’s certification is that the Regional Director assigned an attorney from the Regional Director’s own office to act as a hearing officer, and that the hearing officer made recommendations. According to FDI, this action violated either 5 U.S.C. § 554(d)(2), which requires that a hearing officer not be responsible to the prosecuting agency, or § 9(c)(1) of the National Labor Relations Act, 29 U.S.C. § 159(c)(1), which *1253 provides that hearings concerning questions of representation may be conducted by an employee of the regional office “who shall not make any recommendations with respect thereto.”
Neither of these arguments are persuasive. The Administrative Procedure Act does not apply because it specifically exempts worker certification proceedings from its requirements. 5 U.S.C. § 554(a)(6). Section 9(c)(1) applies only to preelection certification proceedings. 29 U.S.C. § 159(c)(1). Thus, the Regional Director’s appointment of a post election hearing officer did not conflict with any statutory pro-. vision. Furthermore, FDI makes no showing or allegation of any bias on the part of the hearing officer.
C.
FDI next contends that the Regional Director and hearing officer committed prejudicial error by failing to enforce FDI’s requests for subpoenas of documents concerning possible discrimination by the Union. This contention is foreclosed by our holding in Natter Manufacturing Corp. v. NLRB, 580 F.2d 948 (9th Cir. 1978), cert. denied, 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979). There we held that the Board could properly refuse to conduct a hearing on allegations that the Union engaged in discriminatory practices and, therefore, the opportunity to subpoena witnesses, where the objecting party fails to proffer specific evidence that would constitute a prima facie showing of discrimination. Id. at 951-52, 952 n.4. FDI here made no specific allegations of discrimination or otherwise provided any basis for showing that the Union was engaged in discrimination. Indeed, FDI appears to have engaged in a “fishing expedition” of which we specifically disapproved in Natter. Id. at 952 n.4.[3]
D.
Finally, FDI contends that the Union coerced employees, in violation of the rule stated in NLRB v. Savair Manufacturing Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), by stating that those who did not vote for the Union would have to pay a $20 initiation fee.
In concluding that the Union did not make such a coercive statement the hearing officer relied on the testimony of employee Holmes and disregarded the conflicting evidence of witness Diaz. Credibility determinations are within the special province of the Board and absent exceptional circumstances will not be overturned on review. See NLRB v. Longshoreman’s Local No. 8, 473 F.2d 15 (9th Cir. 1973). FDI has shown no special circumstances requiring that we overturn the credibility choice of the Board.
The orders staying the Board’s proceedings against respondents are vacated. The Board’s order in FDI is enforced.

. We do not express any views on whether Board proceedings fall within the scope of § 362(b)(4).

. We need not decide whether the Board’s orders can be enforced against succeeding operators of the businesses in either FDI or In re Bel Air Chateau. The defense that there has been a bona fide discontinuance and a true change of ownership can be raised at enforcement, compliance, or contempt proceedings. See NLRB v. West Coast Casket Co., 469 F.2d 871 (9th Cir. 1972).

. Because FDI raised the discrimination issue in the unfair labor practice proceedings, we need not determine the correctness of the rule in Handy Andy, Inc., 208 N.L.R.B. No. 59 (1977), in this case. Natter Mfg. Corp. v. NLRB, 580 F.2d 948, 951 n.2 (9th Cir. 1978), cert. denied, 439 U.S.. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979).