865 F.2d 1268
 135 L.R.R.M. (BNA) 3056
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 NATIONAL LABOR RELATIONS BOARD, Petitioner (87-6049),
Cross-Respondent (87-6065), Respondent (87-6089),
v.
SCHMIDLIN, INC., Respondent (87-6049), Cross-Petitioner (87-6065),
International Brotherhood of Electrical Workers, Local 1076,
Intervenor (87-6049/6065), Petitioner (87-6086).
 
 Nos. 87-6049, 87-6065 and 87-6086.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1989.
 Before ENGEL, Chief Judge, BOGGS, Circuit Judge, and ROBERT M. McRAE, Jr.,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Respondent-Cross Petitioner Schmidlin, Inc., and Petitioner-Intervenor International Brotherhood of Electrical Workers, Local 1076 (the "Union") petition for review, and the National Labor Relations Board petitions for enforcement of the decision of the National Labor Relations Board in A-1 Schmidlin Plumbing & Heating Company and Schmidlin, Inc. & Local Union No. 1076, International Brotherhood of Electrical Workers, No. 8-CA-18288, July 31, 1987. The Board held that: (1) Schmidlin, Inc. was not an alter-ego of A-1 Schmidlin, and therefore was not obligated to honor the Union contract negotiated with the Union by A-1 Schmidlin; (2) Schmidlin, Inc. was a successor employer to A-1 Schmidlin and therefore was obligated to bargain with the Union when Schmidlin, Inc. commenced operations; (3) Schmidlin Inc. violated section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 158(a)(1), by conditioning employees' continued employment upon renouncing union activity; and (4) Schmidlin Inc. violated section 8(a)(3) of the NLRA, 29 U.S.C. Sec. 158(a)(3), by conditioning James Neary's employment upon Neary's abandonment of the Union. We grant enforcement of the order.
 
 
 2
 Formed in 1960, A-1 Schmidlin ("A-1") was a member of Toledo Heating & Air Conditioning Contractors Association and signatory to the collective bargaining agreement with Local Union No. 1076 International Brotherhood of Electrical Workers, and Local Union No. 50 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. A-1 was formed by Oscar Schmidlin, the father of Charles and Walter Schmidlin. While Oscar exercised day-to-day control of the business, Mary Lucille Schmidlin, step-mother of Charles and Walter, was majority stockholder and president of the company. Both Charles and Walter Schmidlin were given minor shareholds.[1] Charles played no significant role in the overall management of the company, although he did hold the title of vice president and, on occasion, would undertake action on behalf of the company at Oscar's direction. Charles supervised, hired, and fired service and installation employees who performed bargaining unit work; however, all retail sales and other business activities were controlled by Mary Lucille and her daughter Kathleen Vaculik.
 
 
 3
 Oscar Schmidlin died in 1983. After Oscar's death, Charles became concerned over his lack of control of A-1's affairs, and in the fall of 1984, at Mary Lucille's suggestion, joined with Walter in exploring the possibility of purchasing A-1 Schmidlin. In November, 1984 Walter and Charles incorporated Schmidlin, Inc. The stock of this new company is owned equally by Walter and Charles.
 
 
 4
 Schmidlin, Inc. then agreed to purchase A-1 Schmidlin for $160,000. On December 27, 1984 Schmidlin, Inc. agreed to purchase the name, vehicles, supplies, equipment, inventory, customer list, accounts receivable, and real estate of A-1 Schmidlin and to take over the payroll effective January 1, 1985.[2] A-1 Schmidlin ceased doing business on December 31, 1984, and on January 1, 1985, Schmidlin, Inc., began operation at the facility owned by Lucille Schmidlin; Schmidlin, Inc. conducted operations in its own name and with independent legal counsel, bank account, business permits, and pay records. Some name changes, however, were not made until after April, when titles were transferred, items such as trucks were repainted, and signs were changed. With the start of the new company, Walter transferred accounts from his former business, which provided Schmidlin, Inc. one-quarter of its customers.
 
 
 5
 Before Schmidlin, Inc. commenced operations, Charles notified employees that A-1 Schmidlin was going out of business in the last week of December. On December 31, 1984, Charles sent a letter to the Union's business manager Thomas Curley informing the Union that A-1 Schmidlin was terminating business that day. Charles gave all A-1 Schmidlin employees employment applications and told them that he and Walter had formed Schmidlin, Inc., and would hire any employee who wanted to work for the new company. Charles told three Union service employees--Roy Williams, Ed Vaculik, and James Neary--that the new company would be non-union; Charles specifically told James Neary that he would have to fill out a job application and get a withdrawal card from the Union.
 
 
 6
 Neary did not fill out an application, nor did he seek to withdraw from the Union, although Ray Williams and Ed Vaculik had sought to do so. At the advice of Curley, Neary arrived at work at the usual time on January 2, 1985. Although other service employees were given assignments, Neary just sat for a few hours and then went home. After he was treated the same way for the next two days, Neary made no further contact with the company.
 
 
 7
 On January 3, 1985 Business Manager Curley called secretary Kathleen Vaculik and inquired about the status of Union members Williams, Ed Vaculik, and Neary; Curley was told that Roy Williams now was Warehouse Manager, that Ed Vaculik was Field Supervisor, and that Neary had "some things to work out." Curley later contacted Roy Williams and Ed Vaculik, advising them that he would not provide the withdrawal cards which they had earlier requested.
 
 
 8
 We agree with the National Labor Relations Board that Schmidlin, Inc. was not the alter-ego of A-1 Schmidlin. The alter-ego doctrine "will be applied, when appropriate, to treat two nominally separate business entities as if they were a single continuous employer." NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 579 (6th Cir.1986). Substantial evidence supports the Board's finding that Charles' and Walter's arm's length purchase of A-1 Schmidlin, whereby Mary Lucille's control of the operation was purchased, was a "bona fide discontinuance and a true change of ownership," not merely a "disguised continuance of the old employer." Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106 (1942). There appears no evidence of collusion among Charles, Walter, and Mary Lucille.
 
 
 9
 Moreover, substantial evidence supports the Board's determination that Schmidlin Inc. was a successor corporation to A-1 Schmidlin which was required to bargain with the incumbent union. Determination of successor status is "primarily factual in nature and is based upon the totality of the circumstances of a given situation, requir[ing] ... the Board [to] focus on whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantail change, the predecessor's business operations.' " Fall River Dyeing & Finishing Corp. v. NLRB, 107 S.Ct. 2225, 2236 (1987), quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184 (1973). Schmidlin Inc. took over A-1's facilities; purchased A-1's name, vehicles, supplies, equipment inventory, customer list, accounts receivable, and real estate; assumed A-1's payroll; and continued business as usual on January 1, 1985. This evidence overwhelmingly supports the Board's conclusion that Schmidlin, Inc. was a successor to A-1 Schmidlin.
 
 
 10
 Once a successor corporation has employed a "substantial and representative complement" of its workforce, it is obligated to bargain with the incumbent union if a majority of the successor's employees had been employed by the predecessor. Id. at 2238. As a successor, Schmidlin, Inc. is bound to bargain with the incumbent union because, when it commenced operations on January 1, 1985, it employed a substantial and representative complement of its employees (17 of 20 Schmidlin, Inc. employees were hired on that date) and a majority of those employees (13 of 17) were former A-1 employees. Moreover, there was substantial continuity in the Union workforce; of the eight union employees hired in January 1985, six (Bruce Day, Roger Duncan, Douglas Lunch, Jeffrey Rogge, Edward Vaculik and Roy Williams) were former A-1 Schmidlin union employees. Given the composition of the A-1 workforce in December 1984 and the composition of the new Schmidlin, Inc. workforce in January 1985, Schmidlin was clearly required to bargain with the incumbent Union.
 
 
 11
 Further, substantial evidence in the record supports the Board's finding that Schmidlin, Inc. violated section 8(a)(1) of the NLRA, 29 U.S.C. Sec. 158(a)(1), by conditioning continued employment upon renunciation of the Union. Charles Schmidlin told employees that he would not employ them if they were Union members, and, not surprisingly, Roy Williams and Ed Vaculik, upon being hired by Schmidlin, Inc., thus sought to obtain withdrawal cards from the Union. James Neary was likewise told that he needed to withdraw from the Union, although he refused. These facts amply support the Board's finding that Schmidlin, Inc. violated section 8(a)(1) of the NLRA.
 
 
 12
 Further, substantial evidence supports the Board's finding that Schmidlin, Inc. violated section 8(a)(3) of the NLRA, 29 U.S.C. Sec. 158(a)(3), when it refused to hire James Neary because of his union membership. After the change in management, Neary arrived at work but, unlike all other employees, failed to receive work assignments for the first three days; when Union business agent Curley questioned Kathleen Vaculik about Neary's status, Vaculik evasively told Curley that Neary "had to work things out." Schmidlin, Inc. has argued that it did not hire Neary because he failed to fill out an employment application. However, in light of the attempted Union withdrawal of two other employees, and the fact that filing an application serves little purpose when an employer already knows the employee's qualifications, we agree with the Board that Neary was not hired because of his continuing Union membership.
 
 
 13
 Accordingly, the order of the National Labor Relations Board is ENFORCED.
 
 
 
 *
 Honorable Robert M. McRae, Jr., Senior District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 At the time A-1 Schmidlin ceased business on December 31, 1984, Mary Lucille Schmidlin owned 66 shares, Charles Schmidlin owned 4 shares and corporation secretary Kathleen Vaculik, daughter of Mary Lucille, owned 4 shares. Walter sold his shares in the 1970's
 
 
 [2]
 Formal transfer of the assets to Schmidlin, Inc. was finalized in April 1985