MARTHA CRAIG DAUGHTREY, Circuit Judge.
This putative class-action case is before us for the second time, following the remand ordered in Schreiber v. Philips Display Components Company, 580 F.3d 355 (6th Cir.2009). In that appeal, we reviewed the district court’s decision dismissing the plaintiffs’ claims that the defendants breached both § 301 of the Labor Management Relations Act (LMRA) and their fiduciary duties under the Employee Retirement Income Security Act (ERISA) when they refused to provide lifetime medical insurance coverage for the plaintiffs, their former employees. The district court held that the applicable collective bargaining agreement (CBA) unambiguously failed to vest retiree healthcare benefits and that the loss of benefits did not implicate the employer’s fiduciary duties under ERISA. Our review of the record suggested that relevant portions of the CBA could be seen as ambiguous, and we faulted the district court’s failure to consider the summary plan descriptions (SPDs) provided by the employer when parsing the terms of the CBA. The district court had instead treated the SPDs as “extrinsic evidence” unnecessary to its decision, in view of the CBA’s “plain language.” We also questioned whether the district court had adequately reviewed the *387 plaintiffs’ ERISA claim and directed the court to expand its consideration of that claim.
On remand, the district court heard testimony, reviewed the SPDs in question, and again entered judgment in the defendants’ favor, finding (1) that there was no evidence of an intent to vest retiree healthcare benefits and, therefore, that the defendants were not obligated to provide lifetime medical insurance coverage; (2) alternatively, that the plaintiffs were not employees of the defendants at the time they retired, but instead were employees of a successor company and, thus, no longer eligible for healthcare benefits formerly provided by Philips Display; and (3) that the ERISA claim was both unsubstantiated and time-barred.[1] We find no reversible error and affirm.
The facts giving rise to the issues in this appeal are set out in detail in our initial decision and need not be restated at great length here. Instead, our main focus at this point is on the additional evidence adduced on remand, including the provisions of various company SPDs and testimony provided at the bench trial in district court.
In summary, the record shows that until 2001, defendant Philips Display Components Company (Philips Display), a division of defendant Philips Electronics North America Corporation (referred to in the record as PENAC) located in Ottawa, Ohio, manufactured cathode ray tubes (CRTs) for television sets. PENAC was headquartered in Ann Arbor and had set up defendant Philips Access Center for Employees (referred to in the record as PACE) as an unincorporated entity to provide administrative services for its various employee benefit plans. In turn, PENAC was a subsidiary of a Dutch company, Koninklijke Philips Electronics, N.V. (referred to in the record by its translated name, Royal Dutch Philips). In 2001, Royal Dutch Philips merged[2] with a Korean competitor, LG Electronics, to form a new company called LG Philips Display Holding, B.V., and relocated its headquarters to Hong Kong. The holding company in turn formed a new subsidiary, LG Philips Displays USA, Inc. (LG Philips), to combine Philips Displays’s former television CRT business with LG’s manufacture of CRTs for monitors. As part of the changeover, LG Philips assumed the liabilities of the Ottawa plant formerly owned by Philips Display, including the existing CBA. The new company began a separate operation on July 1, 2001, and — as of that date — Philips Display ceased to exist. The *388 record also suggests that LG Electronics paid $330 million for the Ottawa plant.
At the time of the merger and resulting formation of LG Philips, hourly-employees at the Ottawa plant worked under a CBA that Philips Display had negotiated with the International Brotherhood of Electrical Workers (the IBEW). It took effect on October 2, 2000, and was set to expire on September 28, 2003. Because the market for CRTs was already beginning to sag prior to the negotiations in 2000, Philips Display let it be known that it planned to close the Ottawa plant, prompting the IBEW to bargain for a more pro-employee retirement system, including a guarantee of vested retiree healthcare benefits that would continue after the plant was shut down. Philips Display repeatedly rejected the union’s lifetime-benefits proposal, until the IBEW finally dropped the request. As a result, lifetime healthcare benefits of the kind now claimed by the plaintiffs were not included in the contract, explicitly or by implication, as the district court found in its original opinion. Instead, the provision for medical insurance was limited to those retirees who met the eligibility criteria set out in the SPDs, which, under the CBA, allowed them to “purchase health insurance coverage on the same terms and at the same employee contribution levels as in effect for active employees.”
Nor did the SPDs contain language that could be interpreted to create a right to vested healthcare benefits, although the pension plans were, of course, vested. The various insurance plans required that an hourly employee “[b]e eligible for a company sponsored medical plan immediately prior to retirement” in order to qualify for retiree health benefits. The SPDs also provided that coverage would end when an employee left Philips Display, or otherwise became ineligible for benefits, and when the plan was terminated. The SPDs also carried a disclaimer: “The company reserves the right to charge for coverage or to end or amend medical coverage for you or your dependents at any time subject to the provisions of the applicable collective bargaining agreement.”
The SPD provisions for salaried employees, most of whom were located in Ann Arbor, carried the same prerequisite, ie., that a retiring employee be “eligible for a company-sponsored medical plan immediately prior to retirement,” and it contained a similar disclaimer: “Although the company presently intends to continue the plan indefinitely, Philips Electronics North American reserves the right to alter any of its provisions, to change the amount of contributions or to terminate all or any part of it, as the company in its sole discretion deems necessary, without prior notice to any covered person.”
As compared to the rather impermanent nature of the welfare benefits, the CBA called for “lifetime,” “vested,” “non-forfei-table” pension benefits to be paid “as long as you live,” “at the company’s expense.” As the defendants now point out, that language demonstrates that the company and the union knew how to draft language guaranteeing continued benefits, but none of the vesting language appears in either the CBA or the SPD provisions governing welfare benefits. It is thus clear from the record — despite testimony by three or four former Philips Display employees that they “believed” their medical benefits would continue for life[3] — that the district *389 court did not err in concluding that the parties to the 2000 CBA did not intend to provide for vested medical insurance coverage for Philips Display retirees.
The district court also held that the defendants had no obligation to the plaintiffs because, as former employees, they were not eligible for retiree health care benefits under the terms of the SPDs. When the new parent corporation, LG Philips Holding, came into existence, on July 1, 2001, the Ottawa plant was conveyed by Royal Philips to LG Philips Holding, and the hourly workers in Ottawa and salaried workers in Ann Arbor became employees of the holding company’s new subsidiary, LG Philips. They had been notified of the sale and the impending change in management, and they were also told that the 2000 CBA would remain in place and that LG Philips “would set up the same medical plans” previously provided by Philips Display. As a result, the new LG Philips insurance plans covered Ottawa employees who retired after July 1, 2001, including all the hourly and salaried workers who are plaintiffs in this case. Because they were not “eligible for a Philips sponsored medical plan immediately prior to retirement,” as required by the Philips Display SPDs, they were no longer eligible for the retiree benefits formerly provided by Philips Display, although they were covered by the equivalent LG Philips insurance coverage for retirees. Indeed, as the district court found, the plaintiffs— no longer employees of Philips Display after July 1, 2001 — actually retired from LG Philips but were trying to establish eligibility under the Philips Display insurance plans that were no longer applicable to them.[4]
Given the evidence in the record, we conclude that the district court did not err in holding that Philips Display was under no further obligation to provide healthcare benefits to the plaintiffs. In reaching that decision, the district court rejected the plaintiffs’ contention that Philips Display was LG Philips’s alter ego “in reverse,” making Philips Display, as the predecessor company, somehow liable for the obligations undertaken by LG Philips, the successor company. The plaintiffs argued below — and renewed the argument on appeal — “that LG Philips, USA, Inc. (LGP), upon its July 1, 2001 acquisition of the Ottawa facility and Ann Arbor office, acted as an alter ego for the Defendants.” They then explained, correctly, that the alter ego doctrine will “bind a new employer that continues the operation of an old employer in those cases where the new employer is ‘merely a disguised continuance of the old employer.’ ” NLRB v. Fullerton Transfer & Storage, Ltd., 910 F.2d 331, 336 (6th Cir.1990) (quoting Southport Petroleum, Co. v. NLRB, 315 U.S. 100, 106,' 62 S.Ct. 452, 86 L.Ed. 718 (1942)). *390 But, it does not follow that the doctrine operates in reverse, ie., that it will make the old employer liable for the obligations of the new employer, as the plaintiffs would have us do in this ease. They have cited no authority that would require such a result, and we know of none.
Moreover, the district court analyzed the evidence in the record and correctly determined that the LG Philips was not the alter ego of Philips Display, given that the changeover involving those two entities was only a small part of a global transaction that created a new holding company combining some 36,000 employees and over 25 factories. After the changeover, LG Philips moved its operation to Mexico, closed down the offices in Ann Arbor, and no longer manufactured CRTs for televisions. Obviously, LG Philips was not a “disguised continuance” of Philips Display — in short order, the Ottawa plant became more nearly a ghost operation, with some 800 non-working employees collecting pay and benefits and waiting for the existing CBA to expire before retiring. Although it is not clear from the record, we assume that they then received retiree health care benefits from LG Philips until that company declared bankruptcy in 2006, prompting them to seek coverage from their former employer.
The district court also held that the defendants had not breached their fiduciary duties under ERISA. The plaintiffs claimed that PENAC and PACE failed to comply with ERISA procedures in terminating the retirees’ health care benefits as of July 1, 2001. However, the district court found on the merits that the employees had received proper notice and complete information about the termination of Philips Display’s insurance coverage and the obligations that LG Philips assumed at the time of the transfer. The court also held that because the plaintiffs had this information in mid-2001, their ERISA claims were time-barred. Those claims were set out in a complaint that was not filed until January 2007. Under ERISA’s statute of limitation governing claims for non-fraudulent breach of fiduciary duty, however, an action must be brought within six years after the purported violation or omission or within three years of the date on which a plaintiff had knowledge of the alleged breach, whichever comes first. 29 U.S.C. § 1113. In order to be timely, the claims should have been filed by July 2004 and, therefore, the district court did not err in holding that they were time-barred.
For the reasons set out above, we AFFIRM the judgment of the district court.

. "On appeal from a judgment entered following a bench trial, we review the district court’s factual findings for clear error and its legal conclusions de novo.” Pressman v. Franklin Nat. Bank, 384 F.3d 182, 185 (6th Cir.2004) (citing Harrison v. Monumental Life Ins. Co., 333 F.3d 717, 721-22 (6th Cir. 2003)). Although the parties agree that this is the correct standard for our review, they disagree as to whether the district court’s findings reflected factual or legal conclusions. Because we hold that the district judge did not err regardless of the standard of review, we need not determine what standard of review applies.

. The record refers variously to a "merger,” a "joint venture,” an "acquisition,” and a "sale” in describing the formation of LG Philips Display Holding Company. As a technical matter, it is not clear by what legal means the new entity came into existence. Although the upper management was split evenly between the former executives of the Dutch and Korean companies, the headquarters operation was moved to Hong Kong, apparently because LG Electronics had maintained a strong Asian market, as opposed to the strong European market that Royal Dutch Philips had enjoyed. According to one company executive who testified, the business culture in existence after the merger was "extremely” Korean.

. This belief undoubtedly stemmed from the fact that Philips Display had continued to carry medical insurance for its retirees long after retirement, even though the company could have "end[ed] or amend[ed] retiree medical coverage at any time” under the terms of the plans. At least one former Philips Display employee who testified at the *389 bench trial was still receiving health care benefits as a result of his retirement prior to July 1, 2001.

. As noted above, because of the lack of demand for television CRTs, Philips Display had already announced its intention to shut down the Ottawa plant the year before it was sold to LG Philips and had agreed, as part of the CBA negotiations in 2000, to maintain employment of 800 hourly workers during the term of the new CBA, even if the plant closed. After the sale, LG Philips decided to move their CRT operation to a new factory in Mexico. The Ottawa plant closed in December 2002, but the hourly workers were paid wages and received benefits under the CBA until September 28, 2003. After that date, former Philips Display employees who had retired prior to June 1, 2001, continued to receive their pension and insurance benefits from Philips Display. Those retiring after that date, including the plaintiffs in this case, received pension and insurance benefits through LG Philips — until LG Philips went bankrupt in 2006.