**NELSON ELECTRIC, Gary C. Nelson, Inc. and Gary C. Nelson Electric, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1292.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 19, 1980.

Decided Jan. 27, 1981.

Frank J. Thermes, Thermes & Mahan, Charles Mahan, Dayton, Ohio, for petitioners.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Fred Howard, Bernard Levine, Director, Region 8, N. L. R. B., Cleveland, Ohio, for respondent.

Before JONES, Circuit Judge, PECK, Senior Circuit Judge, and NIXON, District Judge.*

PER CURIAM.

Nelson Electric appeals from an order that it violated Sections 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 *et seq.*, by repudiating the collective bargaining representative of its employees. 241 NLRB No. 88. The National Labor Relations Board (the Board) has cross petitioned for enforcement of its order. For the reasons set forth below, we grant enforcement.

## FACTS

Gary Nelson was a member of the International Brotherhood of Electrical Workers Local No. 669, AFL–CIO (the Union). He decided to establish an electrical contracting business. Because Union rules prohibit any owner from working with the "tools of the trade" and from maintaining active membership in the Union, Gary Nelson was advised by the Union's business manager to have his wife own the new business. Louella Nelson became the sole owner of the new firm, Nelson Electric. Subsequently, the Union referred Gary Nelson to work for Nelson Electric.

On January 14, 1975, the Union's business manager and Louella Nelson executed a "Letter of Assent-A" which provided:

> In signing this letter of assent, the undersigned firm does hereby authorize West-

* Honorable John T. Nixon, District Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

ern Ohio Chapter, N.E.C.A. as its collective bargaining representative for all matters contained in or pertaining to the current approved Inside Wireman Labor agreement between the Western Ohio Chapter, N.E.C.A. and Local Union 669, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the 5th day of December, 1974. It shall remain in effect until terminated by the undersigned employer giving written notice to the Western Ohio Chapter, N.E.C.A. and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.

The Union's International Office approved the "Letter of Assent-A." The then current collective bargaining agreement became effective on November 1, 1974 and expired on October 31, 1976. A new collective bargaining agreement took effect on November 1, 1976 and continued in effect until October 31, 1978.

The Union referred employees to Nelson Electric from February, 1975 through September, 1976. During the term of the 1976–78 collective bargaining agreement, Nelson Electric submitted to the Union a January 1 payroll report for two employees. At the hearing before the Administrative Law Judge, Louella Nelson testified that the January, 1977 payroll report was returned because the work had been performed in December, 1976.

In February, 1977 the Union's business manager discussed with Gary Nelson his four-month arrearage in Union dues. Two weeks later, during a second conversation, Gary Nelson informed the Union's business manager that business was bad and that he was going to go "non-union." On February 24, 1977, Louella Nelson wrote the following letter, on Nelson Electric stationery, to notify the Union that it was going "non-union":

Dear Bob:

This letter is to give formal notice that Nelson Electric owned by L.M. Nelson will be terminating the agreement with Local 669 I.B.E.W.

Thanks, sincerely, Bob for all the help you've given us.

Since February 24, 1977, Nelson Electric has not complied with the terms and provisions of the Union's collective bargaining agreement.

In either late December, 1976 or early January, 1977, Gary Nelson of Gary C. Nelson Electric, was awarded a $12,000 contract to do the electrical work at a Long John Silver's Seafood Shoppe in Springfield, Ohio.

On April 23, 1977, Gary and Louella Nelson executed a certificate of incorporation of Gary C. Nelson, Inc.

## JURISDICTION

■ The first issue on appeal is whether Nelson Electric transacts sufficient business affecting interstate commerce to be subject to the Board's jurisdiction. We hold that the Board properly asserted jurisdiction over Nelson Electric because it was a member of the multi-employer bargaining unit represented by the National Electric Contractors Association (NECA).

Nelson Electric's intent to be bound by group action may be demonstrated either by an express delegation of authority or alternatively, by a course of conduct which creates apparent authority in the NECA. *NLRB v. R. O. Pyle Roofing Co.*, 560 F.2d 1370 (9th Cir. 1977). Nelson Electric's signing of the "Letter of Assent-A" is sufficient to subject it to the jurisdiction of the Board. Nelson Electric's contention that the "Letter of Assent-A" merely bound it to the terms of the collective bargaining agreement ignores the explicit language in the "Letter of Assent-A" expressly designating the NECA as Nelson Electric's collective bargaining representative.

Nelson Electric contends that it effectively withdrew from the NECA. However, withdrawal can be accomplished only at an appropriate time and, in the absence of Union consent, withdrawal is untimely if attempted after the commencement of negotiations. Contrary to the terms of the

"Letter of Assent-A," Nelson Electric did not withdraw 150 days prior to the current anniversary date of the agreement.

██ Indeed, Louella Nelson's letter, on behalf of Nelson Electric, withdrawing from the NECA was not written until February 24, 1977. Also, at least one payroll report was submitted for December, 1976 (two months after the original agreement expired). Thus, we also hold that Nelson Electric's conduct after the commencement of the new collective bargaining agreement on November 1, 1976 was sufficient to require its adherence to the terms of the 1976–78 collective bargaining agreement. *See, H. S. Brooks Electric, Inc.*, 233 NLRB No. 889.

### ALTER EGO

The second issue on appeal is whether Nelson Electric can avoid its obligation to adhere to the terms of NECA's collective bargaining agreement by ceasing to do business. The Board found that Gary C. Nelson Electric and Gary C. Nelson, Inc. were "alter egos" of Nelson Electric. Thus, they were obligated to adhere to the terms of NECA's collective bargaining agreement.

██ The criteria which guide the Board's exercise of its discretion to determine if one company is the "alter ego" of another company are whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership. *Crawford Door Sales Company, Inc.*, 226 NLRB No. 1144. The Board's function is to strike a balance among each of the criteria set forth in *Crawford Door.* Applying these principles, we hold that substantial evidence supports the Board's finding.

When Nelson Electric commenced operations, Louella Nelson had no prior experience in running an electrical contracting business. She remained at home and worked in a clerical capacity. She kept the books, paid the taxes, ordered supplies, and signed checks. Gary Nelson decided on which jobs to bid for the manpower necessary to complete the job. He also supervised all work. Gary C. Nelson Electric used the same equipment and checking account as was formerly used by Nelson Electric. Both businesses operated out of the Nelson's home. Louella Nelson's role in Gary C. Nelson Electric was limited to signing checks. All other business affairs were managed by Gary Nelson. Upon the formation of Gary C. Nelson, Inc., the only change from the operation of the prior companies was that Gary Nelson's truck was leased by him to the corporation. Most importantly, the cash assets of the three businesses were completely commingled. Only in May, 1977 was the name on the original bank account changed to Gary C. Nelson, Inc.

These facts are overwhelming evidence to support the Board's determination.

Accordingly, the Board's order is ENFORCED.