**CEMENT MASONS' PENSION TRUST FUND–DETROIT AND VICINITY, et al, trust funds established under, and administered pursuant to, federal law, Plaintiffs,**

**and**

**Laborers' Pension Trust Fund-Detroit and Vicinity, et al, trust funds established under and administered pursuant to, federal law,**

**v.**

**James B. O'REILLY, individually and d/b/a O'Reilly Construction Company, Inc., a Michigan corporation, Defendants.**

Civ. Nos. 84–CV–4973, 85–CV–2215.

United States District Court,
E.D. Michigan, S.D.

July 1, 1987.

Meizlish & O'Hare by: Mark Granzotto, Detroit, Mich., for plaintiffs.

Frederick M. Goldsmith, Southfield, Mich., for defendants.

### MEMORANDUM AND ORDER

COHN, District Judge.

These cases involve separate claims by two fringe benefit funds (the Cement Masons' Fund and the Laborers' Fund) for delinquent health and welfare contributions owed each of them under separate collective bargaining agreements by a cement contractor doing flat concrete work. The Cement Masons' Fund case was originally filed against James B. O'Reilly individually (O'Reilly) and d/b/a O'Reilly Construction Company and subsequently amended to add O'Reilly Construction Company, Inc., a Michigan corporation (the Corporation) as a defendant. The Laborers' Fund case was filed against O'Reilly and the Corporation. O'Reilly did business as a sole proprietorship until he incorporated in February 1983, and thereafter the Corporation conducted the cement business.

O'Reilly, first individually and then on behalf of the Corporation, bid the jobs, supervised the work and hired and fired employees. The equipment and tools used in the work were transferred by O'Reilly to the Corporation.

On September 26, 1985 the Court entered a partial summary judgment in favor of the Cement Masons' Fund against O'Reilly for delinquent contributions through December 1982. Thereafter in March and April of this year the obligations incurred by the Corporation to the Cement Masons' Fund and to the Laborers' Fund were tried to the Court.

■  The proofs at trial establish that the Corporation's delinquent contributions to the Cement Masons' Fund amount to $66,508.91 and to the Laborers' Fund, $33,732.55. These amounts are reflected in the audit testimony (Edward Diroff and Leonard Mroz) and the exhibits introduced by the Cement Masons' Fund (Px1) and the Laborers' Fund (Px1). O'Reilly's testimonial effort to reduce these amounts on the ground that certain of the Corporation's employees listed in the audits did other than cement or laborer's work, or were independent contractors, is not persuasive. The audit witnesses testified that when they reviewed the Corporation's records with O'Reilly in the course of their audits, they eliminated workers who O'Reilly said did not do covered work. Classification of an employee as an independent contractor is a commonly used ruse to escape contractual liability to a health and welfare fund. The workers who O'Reilly described as independent contractors were hired by O'Reilly and worked under his supervision and control on jobs obtained by him. There were, in fact, employees of the Corporation and accordingly, contributions on their behalf are owed to the Cement Masons' Fund and the Laborers' Fund. Also, the collective bargaining agreement relating to the

Cement Masons' Fund specifically prohibited subcontracting.

The real question in the case is the assertion by the Cement Masons' Fund and the Laborers' Fund that O'Reilly and the Corporation are "alter egos" as that term is used in the labor law context and that therefore, O'Reilly is jointly and severally liable with the Corporation for the delinquent contributions of the Corporation. The alter ego doctrine was developed in labor law to prevent employers from evading labor obligations merely by changing or altering their corporate form. *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir.1986). Such evasion is usually manifested by a transfer of assets from one business entity to a new business entity, with a continuation by the new entity of the business of the former entity. 1 *The Developing Labor Law* at 735 (BNA 1983). When appropriate, the doctrine will be applied "to treat two nominally separate business entities as if they were a *single continuous employer.*" *Alkire v. NLRB*, 716 F.2d 1014, 1018 (4th Cir.1983) (emphasis added).

The decision whether to apply the alter ego doctrine is a factual determination. *Allcoast*, 780 F.2d at 579. To determine whether application of the doctrine is appropriate, the circumstances surrounding a change in corporate form must be examined to determine whether the change resulted in a *"bona fide* discontinuance and a true change of ownership," or was merely a "disguised continuance of the old employer." *Id.* (citing *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed.2d 718 (1942)). Further, the court of appeals in *Alkire*, 716 F.2d at 1018, has stated the general rule that:

> If *alter ego* status is imposed upon the two entities, the labor obligations of the original employer will be carried over to the subsequent entity, and *both will be held liable for any violation of these duties by either employer.* (emphasis added).

No case has been cited to the Court by the Cement Masons' Fund or the Laborers' Fund where the court, on an alter ego theory, imposed liability on a predecessor individual for the debts of a successor corporation under the circumstances present here. Application of the doctrine to this case is suspect, especially because "[t]he organization of a corporation for the avowed purpose of avoiding personal responsibility does not itself justify the disregard of the corporate entity." *Gledhill v. Fisher & Co.*, 272 Mich. 353, 359, 262 N.W. 371 (1935).

Although the court of appeals in *Allcoast* held that a specific finding of an "intent to evade" labor obligations is not a prerequisite to imposition of alter ego status, such an intent is nonetheless clearly the focus of the alter ego doctrine. The court of appeals specifically stated in *Allcoast* that:

> When the circumstances so strongly support a finding of alter ego status, as they do here, the Board can properly weigh all of the factors *and infer that the employer intended to evade* union obligations. An inquiry into employer intent *may be appropriate in other situations* involving application of the alter ego doctrine *but here it simply is not necessary.* (emphasis added).

780 F.2d at 583.

The Cement Masons' Fund and the Laborers' Fund do not claim that O'Reilly organized the Corporation in an attempt to evade his obligations under the collective bargaining agreements. Further, there is nothing in the record to suggest that O'Reilly would be responsible for debts of the Corporation on a theory of "piercing the corporate veil." *See, e.g., Soloman v. Western Hills Development Co.*, 110 Mich. App. 257, 262–63, 312 N.W.2d 428 (1981) (After Remand). The proofs at trial did not establish that the Corporation was a "disguised continuance" of O'Reilly's proprietorship. The Court therefore finds that the Corporation was not an alter ego of O'Reilly and that he is not individually liable for the delinquent health and welfare contributions of the Corporation.

Further, the facts show that once established, the Corporation assumed the obligation to make contributions under the col-

lective bargaining agreements by actually submitting fringe benefit forms and making payments, albeit irregularly. *See Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1113–14 (9th Cir.1979); *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 763–64 (9th Cir.1981); *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 515 (9th Cir.1984); *see also, Carpenters Amended & Restated Health Benefit Fund v. Holleman Construction Co., Inc.,* 751 F.2d 763, 770 (5th Cir.1985).

■ At trial, O'Reilly conceded that the Corporation was a valid successor to the proprietorship. In *N.L.R.B. v. Burns Security Services,* 406 U.S. 272, 291, 92 S.Ct. 1571, 1584, 32 L.Ed.2d 61 (1972), the Supreme Court explained that while successor employers are normally not bound by the substantive provisions of a collective bargaining agreement negotiated by its predecessor,

> In many cases, of course, successor employers will find it advantageous not only to recognize … the union but also to observe the pre-existing contract rather than to face undertainty and turmoil. Also, in a variety of circumstances … [it may properly be found] as a matter of fact that the successor had assumed the obligations under the old contract.

Clearly, there is no dispute that the Corporation was a valid successor to O'Reilly, and the Corporation manifested its intent to be bound by the substantive provisions of the collective bargaining agreements through a course of conduct which included voluntary payment of health and welfare contributions pursuant to the labor contracts and through corporate agreements to extend the force and effect of the labor contracts beyond the 1982–84 Book Agreement. Accordingly, because it assumed O'Reilly's obligations under the collective bargaining agreements, the Corporation is liable for the delinquent health and welfare contributions at issue.

The Cement Masons' Fund and the Laborers' Fund shall each submit an appropriate form of judgment against the Corporation. The foregoing constitutes the find-

ings of fact and conclusions of law required by Fed.R.Civ.P. 52.

SO ORDERED.