952 F.2d 403
 139 L.R.R.M. (BNA) 2224
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
C.J.R. TRANSFER, INC., a/k/a C.J. Rogers Transfer Inc.,
Leoni Sand & Gravel Co., and W.P.M., Inc., Respondents.
 No. 91-5272.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 The issue in this unfair labor practice case is whether the record as a whole contains substantial evidence to support a finding by the National Labor Relations Board that one of three affiliated companies, W.P.M., Inc., is an alter-ego of another company in the group, C.J.R. Transfer, Inc. We conclude that the record does contain such evidence, and we shall therefore grant the Board's application for enforcement of the order that was issued on the strength of the alter-ego finding.
 
 
 2
 * C.J.R. Transfer, Inc. ("Transfer") is a trucking company controlled by William Leoni and his three sons, William, Jr., Patrick, and Michael. In an earlier case the NLRB found that Transfer had engaged in unfair labor practices directed at Teamsters Local 247, a labor union that sought to represent Transfer's sand and gravel truck drivers. The NLRB ordered Transfer to cease and desist from such practices, to take remedial measures, and to bargain with Local 247 upon request. This court granted enforcement of the NLRB order. NLRB v. C.J.R. Transfer, 936 F.2d 279 (6th Cir.1991).
 
 
 3
 Shortly after an administrative law judge issued the initial decision in the previous case, Transfer terminated its sand and gravel operations and discharged all of the employees who would have been represented by Local 247 under the ALJ's decision. The employees were told, however, that they could apply for work at two other Leoni companies, Leoni Sand & Gravel and W.P.M., Inc. They were told further that hiring decisions would be made by Jerry Main, the same man who had been their supervisor at Transfer.
 
 
 4
 On the next business day, Leoni Sand & Gravel and W.P.M. hired approximately half of the discharged Transfer employees. In their new employment these men continued driving the same trucks and working on the same projects. The remaining Transfer employees, more than half of whom were NLRB witnesses at the first hearing, were not hired by Leoni Sand & Gravel or W.P.M.; new drivers were hired in their stead.
 
 
 5
 An administrative law judge found that the Leonis had attempted to avoid enforcement of the order entered against Transfer by shifting that company's work to alter-egos. The NLRB agreed, and it issued the order enforcement of which is now being sought in this court.
 
 II
 
 6
 The respondents do not contest the finding that Leoni Sand & Gravel is an alter-ego of Transfer and is bound by the order; they object, however, to the finding that W.P.M. is an alter-ego of Transfer.
 
 
 7
 Transfer was wholly owned by William Leoni, Sr., and his wife. W.P.M. was owned equally by the three sons, William, Jr., Patrick, and Michael. Each son was an officer of Transfer. Michael was president of Transfer. Patrick was vice president of both Transfer and W.P.M. William, Jr., was secretary of Transfer and president of W.P.M. Jerry Main, the truck supervisor at Transfer, was truck supervisor at W.P.M. and had responsibility for W.P.M.'s hiring decisions. It is undisputed that W.P.M. and Transfer shared equipment and personnel.
 
 
 8
 Whether W.P.M. is an alter-ego of Transfer is essentially a question of fact; the Board's finding on this question must be accepted if it is supported by substantial evidence. NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 579 (6th Cir.1986). Enforcement may not be granted unless there is substantial evidence showing that there was not a "bona fide discontinuance and a true change of ownership" of the business, but rather a "disguised continuance of the old employer." Id., quoting Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106 (1942).
 
 
 9
 The appropriate factors to consider in determining whether one company is the alter-ego of another are "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision, and ownership." Nelson Electric v. NLRB, 638 F.2d 965, 968 (6th Cir.1981). It is also appropriate to consider whether anti-union animus contributed to the change in corporate form. Allcoast, 780 F.2d at 581.
 
 
 10
 The Allcoast case concerned a situation in which a predecessor employer, A.E. Ward, divided into two successor employers, Ward Moving and Allcoast. 780 F.2d at 582. The union that had represented employees at A.E. Ward argued that the successor companies should be bound by the collective bargaining agreement executed by A.E. Ward. It was undisputed that Allcoast was the successor of A.E. Ward and was bound by the agreement, so the court only considered whether the Board correctly found that Ward Moving was also bound as an alter-ego.
 
 
 11
 A.E. Ward engaged in interstate and intrastate trucking under its own licenses, using the trade name "Ward Moving and Storage." Ward also engaged in interstate trucking as an agent for a national trucking company, Atlas, under Atlas' license. On Atlas' initiative, Ward's owner (1) created a new corporation with the name "Ward Moving and Storage" to operate as the Atlas agent and (2) renamed the old A.E. Ward "Allcoast." The new Ward Moving was wholly owned by an individual named Harris, who had owned at least 90 percent of A.E. Ward. Harris managed both companies. The supervisor at Ward Moving acted as Harris' agent in his role as supervisor at Allcoast. Ward Moving's business was essentially the same as the part of A.E. Ward's business that involved acting as an Atlas agent. Ward Moving obtained equipment from A.E. Ward and leased trucks from Allcoast that had belonged to A.E. Ward. Ward Moving hired two of A.E. Ward's drivers and A.E. Ward's clerical staff. This court decided that even absent any anti-union animus on the part of Harris, there was substantial evidence to support a finding that Ward Moving was an alter-ego of A.E. Ward and was thus bound to recognize the union that had represented A.E. Ward employees.
 
 
 12
 In the case at bar, similarly, there is substantial evidence that W.P.M. and Transfer shared ownership, management, supervision, and business purpose. The trucking equipment used by the two companies was the same. Transfer had leased all its trucks from C.J. Rogers, Inc., another Leoni controlled company. After Transfer ceased operations, the trucks it had leased were used by W.P.M. and Leoni Sand & Gravel. W.P.M.'s trucks were used to haul material from the same pit in Holly, Michigan, to the same jobs to which they had traveled when operated by Transfer.
 
 
 13
 W.P.M. argues that despite the substantial identity between W.P.M.'s operations and Transfer's, W.P.M. was motivated by an opportunity for profit, not by anti-union animus. Unlike Leoni Sand & Gravel, which took over Transfer's sand and gravel hauling business indefinitely, W.P.M. only hauled sand and gravel for approximately two months; thereafter the equipment and drivers it had taken over from Transfer were shifted to Leoni Sand & Gravel. The primary purpose of having W.P.M. operate some of the sand and gravel trucks was to circumvent a strike that prevented C.J. Rogers, Inc., from performing a contract. W.P.M., the argument goes, was merely a "flag of convenience," not a "disguised continuance" of Transfer.
 
 
 14
 Allcoast, however, expressly rejected the argument that anti-union animus is necessary to find alter-ego status. In any event, there was evidence of anti-union animus in this case. The evidence supports the ALJ's finding that the only reason Transfer drivers were fired and rehired by W.P.M. rather than being transferred to that company along with the equipment was to enable management to avoid having to deal with Local 247.
 
 
 15
 It was essential to W.P.M.'s purpose of circumventing the strike that W.P.M. employ drivers who could cross picket lines. The fact that W.P.M. may only have been used to "flag" trucks that would otherwise have been operated by Transfer or its alter-ego, Leoni Sand & Gravel, does not make it any less an alter-ego than Leoni Sand & Gravel was. W.P.M. was used, even if only temporarily, to do work that otherwise would have been done by unionized Leoni employees. That W.P.M. may no longer be engaged in sand and gravel hauling merely goes to the question of the practical effect of the Board's order, not to the question of whether W.P.M. is an alter-ego.
 
 
 16
 Because there is substantial evidence to support the finding that W.P.M. acted as an alter-ego of Transfer/Leoni, the Board's application for enforcement is GRANTED.
 
 
 
 *
 The Honorable Joseph Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation