**ROOFERS LOCAL 149 SECURITY TRUST FUND, Roofers Local 149 Pension Fund, Roofers Local 149 Vacation–Holiday Fund, Roofing Industry Promotion Fund, and Roofers Local 149 Joint Apprenticeship Fund, Plaintiffs,**

v.

**DUANE SMELSER ROOFING COMPANY, David Smelser, Stacey Smelser, and David Smelser Roofing Company, Inc., Defendants.**

No. CIV.01–40252.

United States District Court, E.D. Michigan, Southern Division.

Sept. 25, 2003.

Michael J. Asher, David J. Selwocki, Sullivan, Ward, Southfield, MI, for Roofers Local 149 Security Trust Fund, Roofers Local 149 Pension Fund, Roofers Local 149 Vacation—Holiday Fund, Roofing Industry Promotion Fund, Roofers Local 149 Joint Apprenticeship Fund, plaintiffs.

Thomas J. Budzynski, Clinton Township, MI, for Duane Smelser Roofing Company, David Smelser dba Duane Smelser Roofing Company, Stacey Smelser dba Duane Smelser Roofing Company, David Smelser Roofing Company, Incorporated, defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

In this civil action, Plaintiffs seek to recover unpaid fringe employment benefit contributions. Before the Court is Plaintiffs' motion for summary judgment. Defendants filed a response, and Plaintiffs filed a reply brief. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

Plaintiffs are employee benefit funds established and administered under the Labor Management Relations Act, 29 U.S.C. § 186, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs are also third-party beneficiaries of a collective bargaining agreement between Roofers Local 149, a labor union, and Defendant Duane Smelser Roofing Company, an employer. From about November 1998 to August 2001, Defendant Duane Smelser Roofing Company did not pay some $249,406.29 in fringe benefits to Plaintiffs as required by the collective bargaining agreement. Nonetheless, due to Plaintiffs' collection efforts, the current amount due is approximately $85,000.00 to $95,000.00. To recover the outstanding amount, Plaintiffs instituted this action on September 13, 2001, pursuant to the ERISA enforcement provisions contained in 29 U.S.C. § 1145[1] and 29 U.S.C. § 1132(g)(2).[2]

Defendant Duane Smelser Roofing Company is a defunct company, however. After some sixty years in business, a decision was made, in about June 2001, to close the company. It ceased operations in August 2001. The company has absolutely no assets to pay the unpaid benefits at issue in this case. Consequently, Plaintiffs also seeks to recover the unpaid benefits from Defendants David and Stacey Smelser on corporate-veil-piercing theory of liability and from Defendant David Smelser Roofing Company on an alter ego theory of liability.

In 1995, Defendant David Smelser left his employment with Defendant Duane Smelser Roofing Company, his father's family's business, to begin his own independent business. Defendant David Smelser, along with his wife, Defendant Stacey Smelser, founded Defendant David Smelser Roofing Company, and the two served as its corporate officers. Unlike Defendant Duane Smelser Roofing Company, which was in the commercial hot tar roofing business, Defendant David Smelser Roofing Company was a shingling firm primarily serving the residential roofing market.

There is no overlap in the ownership interests of the two firms. Defendants David and Stacey Smelser are the sole shareholders of Defendant David Smelser Roofing Company, and Defendant Duane Smelser Roofing Company is/was owned by individuals other than Defendants David and Stacey Smelser.

In 1998, as a favor to Defendant David Smelser's family, Defendants David and Stacey Smelser began working (on a partially paid and a partially volunteer basis) as the corporate officers of Defendant Duane Smelser Roofing Company. Their employment with Defendant Duane Smelser Roofing Company continued until the

---

1. 29 U.S.C. § 1145: "Delinquent contributions. Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

2. 29 U.S.C. § 1132(g)(2): "In any action . . . by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate."

firm closed in August 2001. During this period, Defendants David Smelser Roofing Company, David Smelser, and Stacey Smelser informally lent money to Defendant Duane Smelser Roofing Company, some of which was repaid.

In 1999, it came to light that Defendant Duane Smelser Roofing Company had large federal tax liability, some $560,000.00. This tax liability resulted from actions taken from 1993 to 1997 by prior managers of Defendant Duane Smelser Roofing Company and was unknown to Defendants David and Stacey Smelser when they began serving as Defendant Duane Smelser Roofing Company's officers. Thereafter, the Internal Revenue Service took action against Defendant Duane Smelser Roofing Company in the form of tax levies. Consequently, during the last few months of Defendant Duane Smelser Roofing Company's operations, Defendant David Smelser Roofing Company administered Defendant Duane Smelser Roofing Company's payroll. This was done, on advice of Defendants' accountant, as a means of protecting Defendant Duane Smelser Roofing Company's employees so as to assure that they were paid while the company was closing down its operations in the summer of 2001.

Finally, Defendants David and Stacey Smelser filed for Chapter 13 bankruptcy on January 23, 2003. Because of the resulting bankruptcy stay, the Court administratively closed this case with respect to Defendants David and Stacey Smelser on January 29, 2003.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

■ In moving for summary judgment, Plaintiffs request that the Court enter judgment against all four Defendants for all of Defendant Duane Smelser Roofing Company's unpaid fringe benefit contributions to Plaintiffs. First, because the Court has administratively closed this case with respect to Defendants David and Stacey Smelser due to the bankruptcy stay, the Court will deny Plaintiffs' motion for summary judgment as to Defendants David and Stacey Smelser without prejudice. Second, Defendants do not dispute that Defendant Duane Smelser Roofing Company breached the collective bargaining agreement and failed to pay fringe benefit contributions to Plaintiffs. Thus, although it may be worthless to Plaintiffs because of Defendant Duane Smelser Roofing Company's insolvency, the Court will grant Plaintiffs' motion for summary judgment as to Defendant Duane Smelser Roofing Company. Finally, the only issue that remains before the Court is whether Plaintiffs are entitled to summary judgment as to Defendant David Smelser Roofing Company on an alter ego theory of liability.

■ In the labor law context, the alter ego doctrine prevents employers from evading their statutory obligations by merely changing or altering their corporate form. *See NLRB v. Allcoast Transfer, Inc.,* 780 F.2d 576, 579 (6th Cir.1986). The doctrine is "applied, when appropriate, to treat two nominally separate business entities as if they were a single continuous employer." *Id.* (internal quotation omitted). Therefore, the seminal inquiry is "whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *NLRB v. Fullerton Transfer & Storage Ltd., Inc.,* 910 F.2d 331, 336 (6th Cir.1990). In answering this question, courts employ a multifactor test to determine "whether the two enterprises have *substantially identical* management, business, purpose,

operation, equipment, customers, supervision and ownership." *Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 83 F.3d 747, 759 (6th Cir.1996) (emphasis added) (quoting *Fullerton Transfer*, 910 F.2d at 336). "No one factor is dispositive in determining whether the corporate form should be disregarded in a particular case." *Wilson*, 83 F.3d at 759.

■ "[A] determination of alter ego status is a question of fact," *id.* (quoting *Allcoast Transfer, Inc.*, 780 F.2d at 579), and in this case, Defendant David Smelser Roofing Company has put forth sufficient evidence to demonstrate that there is a genuine issue of material fact for the jury. The Court will review this evidence as it relates to the aforementioned alter ego factors.

The ownership factor heavily favors Defendant David Smelser Roofing Company. The ownership interests of Defendant David Smelser Roofing Company and Defendant Duane Smelser Roofing Company do not overlap, and Plaintiffs do not dispute this fact. *See* Pl. Br. at 9. The fact that the two firms were not owned by the same individuals supports the conclusion that the two were genuinely independent firms.

Furthermore, Defendant David Smelser Roofing Company has offered evidence showing that the two firms did not have substantially identical business, purpose, customers, equipment, or supervision. Defendant David Smelser Roofing Company focuses on residential shingle roofs; Defendant Duane Smelser Roofing Company focused on commercial hot tar roofs, e.g., flat roofs for automobile factories, schools, and the like. Further, Defendant Duane Smelser Roofing Company required bonds for many of its jobs; Defendant David Smelser Roofing Company did not. This information suggests that the firms had different businesses, purposes, and customers. Moreover, while Defendant David Smelser Roofing Company occasionally works for commercial customers, this work is limited to shingle roofs and does not suggest that the two firms' businesses, purposes, and customers were substantially identical.

Furthermore, to conduct its business, Defendant Duane Smelser Roofing Company utilized a considerable amount of weighty equipment such as hot tar trucks, boilers, hot tar barrels, and sheet metal shops. On the other hand, Defendant David Smelser Roofing Company's equipment was limited to ladders, hammers, and nail guns. The headquarters of the two firms were at different locations, and Defendant Duane Smelser Roofing Company's location had a large storage facility for its equipment and supplies. In addition, Defendant Duane Smelser Roofing Company had numerous employees; the same is not true for Defendant David Smelser Roofing Company. More importantly, Defendant David Smelser Roofing Company did not supervise Defendant Duane Smelser Roofing Company's employees. Thus, upon hearing this evidence, a reasonable jury could find that the business, purpose, customer, equipment, and supervision factors favor Defendant David Smelser Roofing Company.

As to the operations factor, on the surface, it appears to weigh in Plaintiffs' favor for two reasons: (1) Defendant David Smelser Roofing Company took over the payroll of Defendant Duane Smelser Roofing Company, and (2) the two firms allegedly commingled funds. As to the payroll issue, however, Defendant David Smelser Roofing Company only ran Defendant Duane Smelser Roofing Company's payroll for a short period just before Defendant Duane Smelser Roofing Company shut down, and this action was taken, at least in part, to blunt the impact of Defendant

Duane Smelser Roofing Company's severe economic emergency on its employees. The limited duration of the intervention suggests that, while an aspect of the two firms' operations were identical, the operations were not substantially identical. Furthermore, although Defendant David Smelser Roofing Company informally lent money to Defendant Duane Smelser Roofing Company on a routine basis due to a crippling cash flow crisis, Defendant Duane Smelser Roofing Company repaid a significant amount back to Defendant David Smelser Roofing Company. *See* Pl. Br. Ex. E ($781,653.20 lent, $360,960.53 repaid, $420,674.67 not repaid). In addition, the two firms had separate books and separate bank accounts, and the two firms kept close track of the loans and the repayments in writing. *See id.* These facts tend to negate the conclusion that the firms were commingling funds.[3] Thus, a reasonable jury could find that the operations factor does not favor Plaintiffs.

Finally, the management factor unquestionably favors Plaintiffs. Defendants David and Stacey Smelser managed both Defendant David Smelser Roofing Company and Duane Smelser Roofing Company. Nonetheless, a single alter ego factor is not dispositive. *Wilson,* 83 F.3d at 759.

Therefore, although the management factor weighs in Plaintiffs favor, the other alter ego factors favor Defendant David Smelser Roofing Company or could go either way. In viewing the facts and drawing all reasonable inferences in a light most favorable to Defendant David Smelser Roofing Company, the Court concludes that alter ego status is a genuine issue of material fact because a reasonable jury could return a verdict for Defendant David Smelser Roofing Company. Consequently, the Court will deny Plaintiffs' motion for summary judgment with respect to Defendant David Smelser Roofing Company.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that, as to Defendant David Smelser and Defendant Stacey Smelser, Plaintiffs' motion for summary judgment [docket entry 13] is **DENIED WITHOUT PREJUDICE** as a result of the bankruptcy stay.

**IT IS FURTHER ORDERED** that, as to Defendant Duane Smelser Roofing Company, Plaintiffs' motion for summary judgment [docket entry 13] is **GRANTED.**

**IT IS FURTHER ORDERED** that, as to Defendant David Smelser Roofing Company, Plaintiffs' motion for summary judgment [docket entry 13] is **DENIED.**

**SO ORDERED.**

---

**3.** Plaintiffs cite to *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.,* 872 F.2d 702 (6th Cir.1988), to support their commingling argument. In *Laborers' Pension,* the alter ego informally lent money to the underlying corporation, which is similar to the situation here. *See id.* at 705. The distinguishing difference, however, is that the underlying corporation in *Laborers' Pension* was operated solely for the alter ego's personal benefit, *see id.;* the same is not true here. If anything, Defendant David Smelser Roofing Company lent money to Defendant Duane Smelser Roofing to its detriment. *See* Pl. Br. Ex. E ($420,674.67 of the loans were not repaid).