*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TRUSTEES OF THE RESILIENT FLOOR DECORATORS
INSURANCE FUND; THE RESILIENT FLOOR DECORATORS
VACATION FUND; THE RESILIENT FLOOR DECORATORS
PENSION FUND - DETROIT AREA; THE RESILIENT FLOOR
DECORATORS APPRENTICESHIP FUND; INTERIOR
SYSTEMS LOCAL 1045 OF THE MICHIGAN REGIONAL
COUNCIL OF CARPENTERS, and UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA,
                            *Plaintiffs-Appellants,*

　　　*v.*

A & M INSTALLATIONS, INC., a Michigan Corporation,
and CARPET WORKROOM, INC., a Michigan Corporation,
                            *Defendants-Appellees.*

No. 03-1149

> 

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72332—Lawrence P. Zatkoff, District Judge.

Argued: October 27, 2004

Decided and Filed: January 5, 2005

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; SARGUS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Nicholas R. Nahat, NOVARA, TESIJA & MCGUIRE, PLLC, Southfield, Michigan, for Appellants. Bruce M. Bagdady, KELLER THOMA P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Nicholas R. Nahat, NOVARA, TESIJA & MCGUIRE, PLLC, Southfield, Michigan, for Appellants. Bruce M. Bagdady, Barbara A. Rohrer, KELLER THOMA P.C., Detroit, Michigan, for Appellees.

---

[*]The Honorable Edmund A. Sargus, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. The Trustees of the Resilient Floor Decorators Insurance Fund (Resilient Floor), on behalf of several multiemployer fringe-benefit funds for union workers in the floorcovering industry, appeal the district court's grant of summary judgment in favor of A & M Installations, Inc. and Carpet Workroom, Inc. This action is brought to collect employee fringe-benefit contributions pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2004). According to Resilient Floor, the district court erred in concluding that no genuine issue of material fact existed with respect to (1) whether A & M and Carpet Workroom were alter egos of one another, or (2) whether Carpet Workroom's installers were independent contractors. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Carpet Workroom sells carpet and flooring to commercial customers. John Lukasik started the company in 1982. Darren Jahner, Lukasik's former brother-in-law, was an employee of Carpet Workroom from 1986 until 2001, when he left the company to devote his full time and attention to A & M, a corporation that he founded in 1997. A & M is a unionized carpet and flooring installation company. While he was employed at Carpet Workroom, Jahner discovered that "there was a need out there" for a floorcovering company that employed union installers, so he decided to form A & M. The need noted by Jahner exists because there are a number of large customers, such as General Motors, that will only award contracts to companies that employ union labor. Because Carpet Workroom often bids for the sale of carpet on union projects, it frequently subcontracts its installation work to the unionized A & M.

In addition to working on many of the same projects and having many of the same customers, Carpet Workroom and A & M share office and warehouse space in the same building, for which A & M pays Carpet Workroom $600 a month in rent. The physical proximity of the two companies' operations permits them to share office equipment and personnel as well. Occasionally, Carpet Workroom's secretary and other office staff answer A & M's phones and assist it with payroll.

As a union shop, A & M is required by the terms of its collective bargaining agreement to make regular employee fringe-benefit contributions to the trust funds maintained by Resilient Floor. These contributions are calculated based on the hours worked by A & M's union employees. Periodic audits conducted by Resilient Floor show that A & M is in full compliance with its payment obligations. Resilient Floor maintains, however, that A & M and Carpet Workroom are in reality alter egos of one another, so that Carpet Workroom should be bound by the terms of the collective bargaining agreement signed by A & M. In the present action, therefore, Resilient Floor seeks to compel Carpet Workroom to make contributions, based on the number of hours Carpet Workroom's employees have worked, to the employee fringe-benefit trust funds maintained by Resilient Floor.

The district court granted summary judgment in favor of A & M and Carpet Workroom, holding that they are distinct corporate entities and not alter egos of one another. Moreover, the court held that Carpet Workroom would be exempt from making contributions in any event because the installers it utilizes are independent contractors, not employees. This timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

We review a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.      Summary judgment was appropriate on the issue of whether A & M and Carpet Workroom are alter egos**

"The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is 'merely a disguised continuance of the old employer.'" *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106 (1942)). In this context, the alter ego theory "prevent[s] employers from evading obligations under the Act merely by changing or altering their corporate form." *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986); *see also NLRB v. C.J.R. Transfer, Inc.*, No. 91-5272, 1992 WL 3708, (6th Cir. Jan. 10, 1992) (unpublished) (applying the alter ego doctrine where a company stopped making required contributions to a benefit trust fund after discharging all of its union employees, but the employees were promptly rehired to work in a nonunion company under the same ownership).

Resilient Floor alleges that Carpet Workroom created A & M to permit Carpet Workroom to capitalize on union contract opportunities while simultaneously evading the collective bargaining obligations faced by other union employers, and that such a business reorganization triggers the alter ego doctrine. But, even if Resilient Floor could produce sufficient evidence to support its theory that A & M was formed for this purpose, it can point to no legal basis to impose liability on Carpet Workroom for the obligations contained within A & M's collective bargaining agreement. When presented with a nearly identical argument, the First Circuit declined to invoke the alter ego theory because it found that there had been no "change in the structure or operations of the employer with whom the collective bargaining agreement was negotiated" that had made the union "somehow worse off." *Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*, 343 F.3d 18, 21, 22 (1st Cir. 2003) (refusing to apply the alter ego doctrine, even though its requirements were technically met, where the company sued "is and always has been, a non-union entity" with no "preexisting labor law obligations").

Our own circuit has suggested in dicta that the alter ego doctrine might also be "applied to so-called double-breasted operations to determine whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d at 336 & n.7 (using the traditional alter ego doctrine to impose liability, but hypothesizing in dicta that the doctrine might be equally applicable "where a company operating with a unionized work force establishes a second, nonunionized company performing the same work in the same market under the same control"). Resilient Floor argues that this variation on the alter ego doctrine would also permit liability to be imposed where a nonunion company establishes a union company and no preexisting labor obligations are disrupted.

This argument is unpersuasive, however, because Resilient Floor disregards the fact that "an intent to evade" preexisting obligations is "clearly the focus of the alter ego doctrine." *Cement Masons' Pension Trust Fund v. O'Reilly*, 664 F. Supp. 277, 279 (E.D. Mich. 1987); *see also Allcoast Transfer, Inc.*, 780 F.2d at 579 (applying the alter ego theory to "prevent employers from evading obligations" under collective bargaining agreements). In the absence of some "indication that the relationship between [the companies] has changed over the years or has caused the [union] to receive less than that for which it bargained," there is no inequity that would justify a court's imposition of liability. *Mass. Carpenters Cent. Collection Agency*, 343 F.3d at 22 ("If the [union] wants to ensure that employers with whom it contracts are not or will not be part of a double-breasted operation, we see no reason why it cannot bargain for such an arrangement.").

Our own court faced this same argument in a case with nearly identical facts to those presented here, in which an affiliate of Resilient Floor was the plaintiff, and we refused to apply the alter ego theory after concluding that there was "no injustice, fraudulent intent, or need to protect employees from being deprived of anticipated benefits" that could justify an extension of the doctrine. *Resilient Floor Decorators Vacation Fund v. Contract Carpet, Inc.*, No. 93-2594, 1995 WL 611148 at *5 (6th Cir. Oct. 17, 1995) (unpublished). Because Resilient Floor has not alleged in the present litigation that A & M concealed its close relationship with Carpet Workroom, and because there is no indication that Resilient Floor has not received the full benefit of its collective bargaining agreement with A & M, the application of the alter ego doctrine is inappropriate here as well.

Even if we were to conclude that the alter ego doctrine could be applied to a situation where there are no preexisting labor obligations, Resilient Floor has still failed to demonstrate that A & M and Carpet Workroom "have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *Nelson Elec. v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981). Resilient Floor points to the fact that A & M was created shortly after Lukasik met with union representatives and discussed the possibility of Carpet Workroom becoming a union company. It also alleges that Carpet Workroom loaned $5,000 to A & M shortly after it was formed so that A & M could post a security bond with Resilient Floor to fulfill a condition of its collective bargaining agreement.

This evidence, however, falls short of the kind of pervasive intermingling of funds and operations necessary to support a finding that two companies are alter egos of one another. *Compare Nelson Elec.*, 638 F.2d at 698 (finding a nonunion successor company to be the alter ego of its union predecessor where the company name was changed but the customers, management, equipment, and employees remained the same and the cash assets of the entities were commingled), *with Roofers Local 149 Sec. Trust Fund v. Duane Smelser Roofing Co.*, 285 F. Supp. 2d 936, 941-42 (E.D. Mich. 2003) (determining that two companies were not alter egos of one another even where one company performed payroll for both and one of the companies failed to repay a $420,000 informal loan from the other). We therefore find no error in the determination of the district court that there is no genuine issue of material fact with respect to whether Carpet Workroom and A & M are alter egos of one another.

**C**.     **Summary judgment was appropriate on the issue of whether Carpet Workroom employs independent contractors to install its flooring**

Another key component of Resilient Floor's claim was to establish the applicability of 29 U.S.C. § 1145 (a part of ERISA), which mandates that fringe-benefit contributions be made on behalf of employees covered by collective bargaining agreements. This ERISA provision, however, is applicable only to company employees, not independent contractors. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 321 (1992). Thus, even if Resilient Floor were able to establish that A & M and Carpet Workroom were alter egos, it would still need to prove that the installers used by Carpet Workroom are employees within the definition of ERISA in order to recover trust fund contributions on their behalf.

This court applies de novo review to the question of whether an individual is an employee or an independent contractor. *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004). Although ERISA's definition of an employee as "an individual employed by an employer," 29 U.S.C. § 1002(6), "is completely circular and explains nothing," *Darden*, 503 U.S. at 323, the Supreme Court has formulated a common-law test for the lower courts to apply in determining this issue. The most important consideration is whether the employer has a "right to control the manner and means by which the product is accomplished." *Id.* (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)). To assess the amount of control exercised by the employer, the court should look to

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over

when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (quoting *Cmty. for Creative Non-Violence*, 490 U.S. at 751-52).

Resilient Floor insists that several of the *Darden* factors support its contention that the persons used by Carpet Workroom to install its carpets are employees of the company, and the issue is therefore inappropriate for summary judgment. First, it points to the fact that Carpet Workroom schedules the installers for assignments without having them bid on particular jobs. As the affidavits supplied by eight of Carpet Workroom's installers attest, however, the installers are free to decline any job to which they are assigned by Carpet Workroom. This practice of assigning installers to particular jobs is apparently a matter of efficiency for Carpet Workroom because, as the district court indicated, it would otherwise "spend a great deal of time each week trying to contact installers in order to inquire whether they would like to work on a given project."

Second, Resilient Floor insists that Carpet Workroom "retains control over the method and timing of completion of the job, by controlling the composition of the work crew" through its practice of hiring "more than one 'independent contractor' per job." This contention also fails to establish that Carpet Workroom's installers are employees, however, because there are numerous reasons why a contractor might hire several subcontractors to work on a given job. The district court, for instance, noted that this practice permitted Carpet Workroom to finish its jobs in a more timely manner.

Finally, Resilient Floors argues that the fact that Carpet Workroom "uses both independent contractors and employees to perform the same type of work . . . [is] an indication that the employer has misclassified the workers as independent contractors." But Resilient Floor cites no authority for this proposition. Moreover, even if this fact were legally significant, the evidence it relies upon fails to establish that the employees of Carpet Workroom perform the same type of work as its independent contractors. Resilient Floor bases its argument on the fact that Lukasik is a salaried employee of Carpet Workroom who also occasionally installs carpet for the company. Lukasik's deposition testimony, however, does not support this contention. As the president of Carpet Workroom, Lukasik stated that he installs carpet "when necessary . . . when [he] can't find anybody to do it." Resilient Floor presents no other evidence to bridge the gap between this testimony and its contention that Lukasik's role is no different than that of an installer, thus failing to raise a genuine issue of material fact with respect to whether Carpet Workroom's installers are its employees.

In addition, Carpet Workroom points to the affidavits of eight persons that it uses as installers, which state that the installers use their own tools, work for other companies in addition to Carpet Workroom, set their own work schedules, are free to accept or reject jobs from Carpet Workroom, carry their own insurance, and do not receive fringe benefits from Carpet Workroom. Documents submitted by Carpet Workroom also demonstrate that it files IRS Form 1099 for the installers it uses, as opposed to IRS Form W-2 that it files for its employees. Resilient Floor has failed to refute this mass of evidence that suggests that Carpet Workroom is solely in the business of selling carpet and that it subcontracts out all of its installation work. Based upon the *Darden* factors, the evidence fully supports the district court's conclusion that Carpet Workroom's installers are independent contractors and thus not subject to employee fringe-benefit contributions.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.